[PHILADELPHIA, JANUARY 2, 1838.]

## CHAMBERS *against* DAVIS.

### IN ERROR.

1. In an action by A. to the use of B. against C., upon an alleged promise by C. to pay the plaintiff a debt which C.'s father (D.) owed him, for sea-stores furnished by the plaintiff to a certain vessel in 1827 and 1828, then owned by D., and which vessel was transferred in 1832 by D. to C., the plaintiff having proved that E. the master of the vessel, had, after the transfer, paid certain claims against the vessel, proposed to ask a witness whether E. had not told him that he paid the money by authority of the defendant, out of the earnings of the vessel: *Held*, that the evidence was properly rejected.

2. It was also *held*, that the plaintiff could not ask what D. said, in the absence of C., as to the ownership of the vessel.

3. The goods in the above case were furnished from a store belonging to B., but which was kept by A. in his own name, during the absence of B.; the defendant having given some evidence to show that B. was in partnership with F., offered in evidence a receipt signed by F., in 1831, acknowledging the receipt of a promissory note from D. "on account of store bill of F. and B.": *Held*, that it was to be presumed that the note was negotiable, and that B. had been made responsible upon it, and that therefore the receipt was admissible.

4. *Held*, that if the transfer of the vessel was made on condition that the defendant should pay the claim of the plaintiff, or if the defendant at the time agreed to pay it, there might be a consideration for the promise. *Secus*, if the transfer was made without such condition, and the promise was made a year afterwards.

5. Where an action is brought by A. to the use of B., proof of B. being in partnership with *another person who is equally interested in the amount, will not defeat the action. If the fact is material to the defendant, he may have it put on the record by motion to the Court.			[*41]

6. It is not error that the Court *requested* the jury if they found for one of the parties, to find specially as to certain matters of fact in dispute in this cause, especially if the jury find for the other party.

ERROR to the District Court for the City and County of Philadelphia.

The action was brought in the District Court by Asa W. Chambers, to the use of Robert Chambers, against Colin K. Davis, upon an alleged assumption by the defendant to pay the plaintiff a debt which his (the defendant's) father, Richard Davis, owed to the said Robert Chambers. The claim was for sea-stores, to the amount of $151 62, and interest, furnished from the store of the plaintiff, between March, 1827, and February, 1828, to the schooner Emily Davis, of which Richard Davis was the owner. During the time in which the sea-stores were furnished, Robert Chambers was absent at sea; and the business was

(Chambers *v.* Davis.)

carried on by and in the name of his son, Asa W. Chambers; and the books of original entry, &c., kept in his (Asa's) name.

On the trial before Judge Pettit, on the 20th of November 1835, the promise by the defendant, in December, 1833, to pay his father's debt was proved by the deposition of Capt. Enoch J. Weeks, who was admitted to have died before the trial—but it was alleged by the defendant that the promise was without consideration. For the purpose of showing that there was a consideration for the promise, the plaintiff gave in evidence the transfer by Richard Davis to his son, (the defendant,) in September 1832, of his interest, being one-half, in the schooner Virginia Trader, a vessel worth about $4000; and contended that the transfer was without consideration, or, at least, was to form a fund out of which the defendant was to pay certain of his father's debts. The defendant alleged it to have been made for a valuable consideration; and this constituted one of the points in dispute in the cause. The plaintiff proved by Capt. James Dunphy and George W. Lehman the payment by the defendant, after the transfer to him, of certain claims they had against the Virginia Trader, contracted by Richard Davis before the transfer.

The plaintiff then called Armer Patton, who testified: " I knew Captain Weeks—he was captain of the Virginia Trader under the defendant, after the transfer. Samuel Patton, my brother, had a claim against Richard Davis, partly for cash lent, and partly for stores to the Emily Davis. The bill was paid by Captain Weeks, when he was captain of the Virginia Trader under the defendant. I don't know where Captain Weeks got the money from." The witness was then asked whether Captain Weeks told him that he paid the money by *the [*42] authority of the defendant, out of the earnings of the Virginia Trader? This was objected to—overruled by the Court, and exception taken. The witness proceeded. "Captain Weeks at first refused to pay the bill." He was then asked, "did not Capt. Weeks, when he refused to pay the bill, allege that he first must get the authority of defendant to pay it out of the earnings of the Virginia Trader; and did he not, when he paid it, say he had such authority?" This was also objected to—overruled and noted. "Richard Davis was present, defendant was not there." He was then asked, "what did R. Davis say as to his son's (the defendant's) ownership of the Virginia Trader, in answer to Captain Week's objections to paying the bill?" This was also objected to—overruled and noted. " The amount of the bill was near $40. The conversation was sometime in the spring or summer of 1833."

The overruling of these questions forms the first assignment of errors.

(Chambers v. Davis.)

The defendant alleged that a certain Edward Lafferty, (whom the plaintiff asserted to be a clerk in his store,) was really a partner of Robert Chambers to whose use the suit was brought. The business was closed in the year 1828, and the store then sold out.   Lafferty was proved to have died in 1831–2.   The defendant offered in evidence the following paper, (marked C. in the bill of exceptions) to prove the fact of a partnership between Robert Chambers and Lafferty, and also a payment by Richard Davis to Lafferty to be set off against plaintiff's bill.

"Camden Aug. 25, 1831.

"Received of Captain Richard Davis, his note of hand for fifty dollars on account of store-bill of Lafferty & Chambers.
         (Signed)                          EDWARD LAFFERTY."

The plaintiff objected to its admission—but the Judge overruled the objection, and admitted the evidence.   Its admission constitutes the second error assigned.

Much evidence was given as to the state of accounts between Robert Chambers and Richard Davis : the defendant endeavouring to show that there was nothing due by the latter to the former.

The plaintiff, among other things, requested the Court to charge the jury, (it being the second point proposed,) "That if the jury believe from the evidence, that Colin K. Davis made the promise in consequence of his father's interest in the Virginia Trader, having been previously assigned to him—there is suffi-. cient consideration for the promise to the plaintiff—and that the value of such interest so assigned, is immaterial to the validity of the promise."   Also, (which was the fifth point proposed,) "That it is not an objection to the plaintiff's *recovery, [*43] that his claim formed no part of the consideration of the transfer of the Virginia Trader to the defendant, in case the jury believe that the defendant made the promise on account of having his father's funds in his hands by such transfer.

The Judge charged, " The main point on which the plaintiff relies is the assignment of the Virginia Trader.   This was a year before.   The conversation was in December, 1833. The transfer in September, 1832."   " You must be satisfied that the defendant had this (the transfer,) in his contemplation when he made the promise.   If he had not, and this had nothing to do with it, the defendant is not bound.   The defendant must have had this transfer in his contemplation to bind them."

To this the plaintiff excepted, and it forms the third error assigned.

The plaintiff also requested the Court to charge as follows ;

(Chambers *v.* Davis.)

(the Court having allowed the defendant to offer evidence as to Robert Chambers and Lafferty being in partnership.)

" That even if the Jury believe that Lafferty and Chambers were in partnership, yet, that by Lafferty's death in 1831 or '32, the right of action for all outstanding claims survived to Robert Chambers; and that a promise by the defendant to him to pay the debt, (if made upon a legal consideration,) will enable him, the plaintiff, to sue upon breach of such promise."

The Judge charged as follows :

" If Lafferty were a partner of Robert Chambers, it is made a question whether the suit is properly brought—whether it should not have been brought by the plaintiff, as surviving partner of Chambers and Lafferty. This question can be settled hereafter, if the jury find for the plaintiff on the merits. If the jury find for the plaintiff, I ask them to find specially for the government of the Court hereafter, whether the goods were sold by Lafferty and Chambers, as partners, or by Chambers alone." And further, he added, " I think that the defendant could take any advantage as to the suit being wrongly brought, that R. Davis could." ·

To this the plaintiff excepted : and it forms the fourth assignment of error.

The jury having found for the defendant the plaintiff removed the record to this Court, and assigned the following errors.

" 1. The Court below erred in refusing to permit Armer Patton to answer the three questions—the rejection of which constitutes the three first exceptions to the decision of the Court below.

2. The Court erred in admitting in evidence the paper marked C.

[*44]　　　*3. The Court erred in their answers to the second and fifth points upon which the plaintiff requested the charge of the Court.

4. The Court erred in directing the jury, if they found for the plaintiff on the merits, to find certain facts specially."

Mr. *G. M. Wharton* for the plaintiff in error cited—*Langhorn* v. *Allnut,* (4 Taunton, 511); *Kahl* v. *Jansing,* (Id. 565); *Raine* v. *Pearson,* (Id. 662); *Riggs* v. *Lawrence,* (3 Term Rep. 454); *Bowerman* v. *Radenius,* (7 Term Rep. 663); *Shelhamer* v. *Thomas,* (7 Serg. & R. 109); *Blight* v. *Ashley,* (1 Peters's C. C. Rep. 15); *Deardoff* v. *Hildebrand,* (2 Rawle, 226); *Ankrim* v. *Woodward,* (4 Rawle, 345); 2 Saunders on Pleadings, &c. 292; Paley on Agency, 220; 2 Salkeld, 442; *Hind* v. *Holdship,* (2 Watts, 104); Stephens on Pleading, 113; 1 Archbold's Practice, 189.

(Chambers v. Davis.)

Mr. *Perkins*, contra, was stopped by the Court; whose opinion was delivered by ·

SERGEANT, J.—In this suit the plaintiff alleged, that Richard Davis was indebted to him in the sum of $151 62; for sea-stores furnished by the plaintiff in the years 1827 and 1828, to the schooner Emily Davis, of which Richard Davis was owner; and that the defendant Colin K. Davis, the son of Richard, promised in the year 1833, to pay this debt to the plaintiff in consideration of a transfer by his father to him in the year 1832, of his interest (being one-half,) in the schooner Virginia Trader, a vessel worth about $4000. The defendant's promise was proved by depositions, but the defendant alleged that the promise was without consideration. The plaintiff contended, that the schooner was assigned as a fund, out of which the defendant was to pay certain of his father's debts and this among others. The defendant insisted, that the transfer was for a valuable consideration paid.

In order to show the terms of the transfer of the Virginia Trader, the plaintiff proved, that the defendant had, after the transfer, paid certain claims against the Virginia Trader, contracted by Richard Davis before the transfer. The plaintiff then called Armor Patton, who testified, that Captain Weeks, while Captain of the Virginia Trader under the defendant, after the transfer, paid Samuel Patton, his brother, a claim he had against Richard Davis, partly for cash lent, and partly for stores to the Emily Davis. The witness was then asked by the plaintiff whether Captain Weeks told him, that he paid the money by the authority of the defendant out of the earnings of the Virginia Trader. To this question the defendant objected. The Court sustained the objections, and the plaintiff excepted.

What Captain Weeks said in the absence of the defendant as to his authority to pay, and as to the fund from which the money arose, seems not admissible in evidence. It would be permitting the agency *to be proved by the agent's own declarations, [*45] not on oath, and in the absence of the party to be affected, which would be of dangerous consequence and is contrary to all the decisions on the subject. *Clarke* v. *Baker*, (2 Wharton, 340.) It is however contended that Captain Weeks by his office of captain of the vessel, (the Virginia Trader,) was the defendant's agent, and had authority to apply the earnings of that vessel to the payment of the defendant's debts.

So far as respected the management and concerns of that vessel, he was agent: and may have had authority to pay bills and charges against the owner contracted on her account. But he was not a general agent, nor agent for other purposes. He had

no right, by virtue of his situation, to apply the earnings of that vessel to pay other debts of the defendant, without his special authority; and no such special authority had been shown. It was requisite expressly to show that he was agent, *quoad hoc,* and then his declarations, if in the course, and during the time of his agency, would be evidence. The deposition of Captain Weeks, it appears, was taken in the cause; and this fact if it existed might have been proved by him.

2. The witness having stated that Captain Weeks at first refused to pay the bill, was asked by the plaintiff whether, when he so refused, he alleged he must first get the authority of the defendant to pay it out of the earnings of the Virginia Trader, and whether he did not, when he paid it, say, he had such an authority. To this question the defendant objected, and the Court overruled the question, and the plaintiff excepted.

The same remarks which have been made upon the first bill of exceptions, apply to the second, and it is not necessary to repeat them.

3. The witness then stated, that Richard Davis was present, and the defendant was not: and was asked by the plaintiff, what Richard Davis said, as to his son's ownership of the Virginia Trader in answer to Captain Weeks's objection to paying the bill. This was objected to, and overruled, and excepted to by the plaintiff.

Richard Davis was equally a third person with Captain Weeks, and his declarations could not bind the defendant or make him liable. They were therefore properly rejected.

4. To understand the remaining points, it is necessary to observe, that this suit was brought in the name of Asa W. Chambers, to the use of Robert Chambers. The store belonged to Robert Chambers, but he went to sea and the business was carried on by and in the name of his son Asa, and the books of entry were kept in Asa's name. It was during Robert's absence, that the debt from Richard Davis was contracted. The defendant alleged, that Edward Lafferty, (whom the plaintiff asserted to be a clerk in his store,) was really, at the time the debt was contracted, a partner of Robert Chambers, for whose use the suit was brought; and to prove a partnership with Robert Chambers and [*46] also a set-off against the plaintiff's *demand, offered a receipt signed by Edward Lafferty, in August 1831, from Richard Davis, of his note of hand for $50, on account of store bill of Lafferty and Chambers. The plaintiff objected to its admission, but the Court admitted it and the plaintiff excepted.

If Lafferty was a partner at the time the debt was contracted, his receipt of a note on account of part of the claim, would be evidence of payment to that amount. A payment by a promissory note, payable to bearer or endorsed in blank, and not pro-

(Chambers *v.* Davis.)

duced dishonoured and unpaid, is considered as a payment of cash. On these points no evidence was given; and the presumption would be, in the absence of all proof, that it was negotiable and that it was an available security, on which Richard Davis had been made responsible. If so he ought not to be obliged to pay it a second time, nor the defendant who is charged with this debt. If it be considered as a payment, then it was a fair discount against the person for whose use the suit was brought, and who is the actual plaintiff, though. his son be the nominal one. But it is said it was not evidence to prove the partnership—nor would it be alone. But evidence had previously been given by the defendant, that went to prove that Richard Davis had declared himself to be the partner of Lafferty; and after such evidence, the declaration of Lafferty to the same effect is admissible, and indeed if believed, the two together may completely establish it.

The plaintiff requested the Court to charge the jury, that if the jury believed from the evidence, that the defendant made the promise in consequence of his father's interest in the Virginia Trader having been previously assigned to him, there is sufficient consideration for the promise to the plaintiff, and that the value of such interest, so assigned, is immaterial to the validity of the promise. The Court charged that the main point on which the plaintiff relied was, the assignment of the Virginia Trader. This was a year before. The conversation was in December, 1833, the transfer in September, 1832. The jury must be satisfied, that the defendant had the transfer in contemplation, when he made the promise. If he had not, and this had nothing to do with it, the defendant was not bound. The defendant must have had the transfer in contemplation to bind him.

To this charge the plaintiff objects as erroneous,. contending that the assignment of the Virginia Trader was a sufficient consideration for the promise by the defendant, whether the defendant had it in contemplation or not. I am of opinion, however, that the Court below went quite as far in favour of the defendant as he was in law entitled to; for without showing more than was stated in the plaintiff's point, there was no consideration for the promise. If the assignment was made on condition that the defendant should pay this claim with others, or if the defendant on receiving the transfer agreed to do so, there might be a consideration. But if the assignment was made without any such condition or understanding, a subsequent *promise, a year afterwards, would be for a consideration executed—it would be [*47] gratuitous, and in law the promise would be *nudum pactum.* Where one person is attempted to be charged with the debt of another, a consideration must be shown—some benefit to the de-

(Chambers *v.* Davis.)

fendant or damage to the plaintiff, as forbearance or the like: but a mere voluntary promise, rests where it began. It may be binding in morals or honour, but is not the foundation of a suit at law; which looks to distributive justice, and demands an equivalent for a promise, before it enforces its performance.

The plaintiff also requested the Court to instruct the jury, that even if the jury believed, that Lafferty and Chambers were in partnership, yet by Lafferty's death in 1831 or 1832, the right of action for all outstanding claims, survived to Robert Chambers, and that a promise by the defendant to him to pay the debt, (if made upon a legal consideration,) would enable the plaintiff to sue upon the breach of such promise. The Court charged, that if Lafferty were a partner of Robert Chambers, it made a question whether the suit was properly brought—whether it should not have been brought by the plaintiff as surviving partner of Chambers and Lafferty. This question could be settled hereafter, if the jury found for the plaintiff on the merits. If the jury found for the plaintiff, he asked them to find specially for the government of the court hereafter, whether the goods were sold by Lafferty and Chambers, as partners, or by Chambers alone. And added, that he thought the defendant could take any advantage as to the suit being wrongly brought that Richard Davis could.

The plaintiff contends, that the Court in effect directed the jury to find a special verdict on certain points, which they had no right to do—the jury being at all times at liberty to judge for themselves whether they would find a general or special verdict. And the law is so; but I do not perceive any harm in the Court's requesting the jury to find specially, as to certain matters of fact in dispute, in order the better to determine the law of the case, on deliberate consultation. And that, it would seem, is all that the Court did. We are not to presume that the jury were embarrassed and perplexed by this request. On the contrary, they found no cause of action whatever in the plaintiff in any point of view. Therefore the presumption is, they deemed it unnecessary to investigate the point. I believe this course has been taken more than once, by judges sitting at Nisi Prius and in Courts of Common Pleas, and it may in some cases be convenient. The jury are not bound by a mere request to do so.

Independently of this, I am not able to perceive the relevancy of the point in this case. Supposing that by the death of Lafferty, the right of action for the claims of the partnership, survived to Robert Chambers, yet he is not the plaintiff in this suit. The suit is by Asa W. Chambers, and the promise is stated to

have been made to \*him—Robert is but the *cestui que use*  [\*48]
or equitable plaintiff: and an omission to state precisely
the character of his claim as such, would not affect the right of
Asa to maintain the action.   If Robert's right was as surviving
partner, and it was material to have that placed on the record, it
might have been done, on motion to the court and the fact have
been recorded by them before or after verdict.   The objection to
the character of the party suing, in order to defeat the action,
goes to the legal party, and not to the *cestui que use* for whom
such party sues.

Judgment affirmed.

Note. See the case of the *Mayor. &c. of Devizes* v. *Clark*, (3
Adol. & Ellis, 506, 30 Eng. C. L. Rep. 135); as to the right of
the Court to request the jury to find special points, and the duty
of the jury.

Cited by Counsel, 9 Watts, 23; 10 P. F. Smith, 171.
Cited by the Court, 4 Wharton, 368.